O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TRACY PLEASANT,<br><br>                 Plaintiff,<br><br>    v.<br><br>AUTOZONE, INC., AUTOZONE<br>WEST, INC., AUTOZONE<br>PARTS, INC., AND DOES 1<br>TO 10,<br><br>              Defendants. | Case No. CV 12-07293-JGB<br>(JCGx)<br><br>**ORDER (1) GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT AND (2)<br>VACATING THE JUNE 24,<br>2013 HEARING**<br><br>**[Motion filed May 24,<br>2013]** |

The Court has received and considered all Defendants' papers filed in support of their Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.  The Court finds this matter suitable for resolution without a hearing pursuant to Local Rule 7-15.  For the reasons discussed below, Defendants' unopposed Motion for Summary Judgment will be granted and judgment will be entered against Plaintiff.

1

# I.   BACKGROUND

## A. Procedural Background

Plaintiff Tracy Pleasant filed a complaint in the Superior Court of California, County of Los Angeles on June 6, 2012.  (See Not. Of Removal, Ex. A, Doc. No. 1.)  On July 9, 2012, Plaintiff filed a First Amended Complaint ("FAC"), alleging claims for wrongful discharge in violation of public policy, breach of the implied covenant of good faith and fair dealing, violation of wage and hour laws, and intentional infliction of emotional distress.  (See id. at Ex. B.) Defendants AutoZone, Inc., AutoZone West, Inc., AutoZone Stores, Inc., and AutoZone Parts, Inc. ("Defendants") timely removed the action to this Court on August 24, 2012.  (Id.)

Defendants filed their Motion for Summary Judgment, or in the alternative, for Partial Summary Judgment on May 24, 2013, ("MSJ," Doc. No. 24) attaching:

A. Separate Statement of Uncontroverted Facts ("SUF") (Doc. No. 14-1);

B. Declaration of Merlyn Baltodano ("Baltodano Decl.," Doc. No. 17), which attached AutoZone's Exceptions to the Store Handbook, California (2004-2008) (Ex. 1, Doc. No. 17-1);

C. Declaration of Martha Culvahouse ("Culvahouse Decl.," Doc. No. 18), which attached the

AutoZone Rewards Program Manual (Ex. 2, Doc. No. 18-1) and the Policy Center Report for Tracy Pleasant (Ex. 3, Doc. No. 17-2);

D. Declaration of Manny Martinez ("Martinez Decl.," Doc. No 19), which attached the Loss Prevention Report regarding Plaintiff's rewards card scans (Ex. 4, Doc. No. 19-1);and

E. Declaration of Michael Hoffman ("Hoffman Decl.," Doc. No 20), which attached

1. excerpts from the certified deposition transcript of Plaintiff (Ex. 5, Doc. No. 20-1),

2. Plaintiff's July 15, 2010 Statement (Ex. 6, Doc. No. 20-2),

3. Autozone's Store Handbook including the Code of Conduct (2004-2008) (Ex. 7, Doc. No. 20-3),

4. AutoZone's Exceptions to the Store Handbook, California (2004-2008) (Ex. 8, Doc. No. 20-4),

5. AutoZone's Store Handbook including the Code of Conduct (2004-2009) (Ex. 9, Doc. No. 20-5),

6. Plaintiff's Division of Labor Standards Enforcement ("DLSE") complaint and file notes and Plaintiff's Public Records Act Request Form(Ex. 10, Doc. No. 20-6),

7. DLSE's August 24, 2010 Notice of Completed
   Investigation and November 2, 2010 letter
   (Ex. 11, Doc. No. 20-7), and

8. DLSE's August 6, 2010 Notice of Claim and
   Conference (Ex. 12, Doc. No. 20-8).

Plaintiff did not oppose Defendants' MSJ.

## B. Plaintiff's Allegations

Plaintiff was employed as an at-will employee by
Defendants in AutoZone stores in Covina, El Monte, and
Los Angeles, California from May 6, 2008 to July 23,
2010. (FAC ¶ 5, 27.) His duties included making
deliveries, handling the cash register, stocking
shelves, and performing various customer service
duties. (Id.) Plaintiff alleges that he was
discriminated against in several ways because he is
African-American, not Hispanic. (Id. ¶¶ 32-33.)

First, he alleges that he was denied his rest and
meal breaks in violation of Title 8 of California Code
of Regulations §§ 11, 12. (Id. ¶ 28.) Bob Armijo,
Plaintiff's manager at the El Monte store, denied
Plaintiff rest and meal breaks, telling him there were
no employees available to cover him. (Id. ¶ 7.) When
Plaintiff attempted to discuss his entitled rest and
meal breaks with Armijo, Armijo reduced his hours.
(Id. ¶ 9.) Plaintiff filed a claim with the California

4

Labor Commission on July 20, 2010 for these violations.
(Id. ¶ 8.)

Second, Plaintiff alleges that he was always assigned tasks requiring heavy lifting, such as unloading truck deliveries.  He was often scheduled only for the truck delivery days, during which he was required to unload the truck alone.  (Id. ¶ 10.)

Third, Plaintiff alleges that other employees were given better schedules and treatment.  (Id. ¶¶ 9-11.) He received less overall hours than newer employees who were Hispanic, rarely had weekends off, and was written up for being late more often than others.  (Id.)

Fourth, Plaintiff alleges that he did not receive promotions to Parts Sales Manager or full-time commercial driver during the spring of 2010, though he deserved a promotion.  (Id. ¶¶ 12-13, 19, 22.)  He was told he had "too many limitations" and was "too slow." (Id.)

Finally, Plaintiff alleges that he was terminated because he is African-American, not Hispanic, although he was told that he was terminated because he used a customer's discount card to obtain a discount for another customer.  (Id. ¶¶ 15-16, 22.)

1

2

## II. LEGAL STANDARD[1]

3

4       A motion for summary judgment shall be granted when

5   there is no genuine issue as to any material fact and

6   the moving party is entitled to judgment as a matter of

7   law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby,

8   Inc.</u>, 477 U.S. 242, 247-48 (1986).  The moving party

9   must show that "under the governing law, there can be

10  but one reasonable conclusion as to the verdict."
<u>Anderson</u>, 477 U.S. at 250.

11      Generally, the burden is on the moving party to

12  demonstrate that it is entitled to summary judgment.

13  <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);

14  <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>,

15  707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party

16  bears the initial burden of identifying the elements of

17  the claim or defense and evidence that it believes

18  demonstrates the absence of an issue of material fact.

19  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

20      When the non-moving party has the burden at trial,

21  however, the moving party need not produce evidence

22  negating or disproving every essential element of the

23  non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.

24  Instead, the moving party's burden is met by pointing

25

26

27      [1] Unless otherwise noted, all references to "Rule"
refer to the Federal Rules of Civil Procedure.

28

out there is an absence of evidence supporting the non-moving party's case.  Id.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252; see also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  In re Oracle, 627 F.3d at 387 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground,

943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv.
Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626,
630–31 (9th Cir. 1987).

### III. FACTS

### A. Plaintiff's Failure to Oppose Defendants' MSJ

"Any party who opposes [a motion for summary
judgment] shall serve and file with the opposing papers
a separate document containing a concise 'Statement of
Genuine Disputes' setting forth all material facts as
to which it is contended there exists a genuine dispute
necessary to be litigated."  L.R. 56-1.  Where, as
here, a party fails to file opposing papers or
evidence, the Court "may assume that the material facts
as claimed and adequately supported by the moving party
are admitted to exist without controversy."  L.R. 56-3;
<u>see also</u> Fed. R. Civ. P. 56(e) ("If a party . . . fails
to properly address another party's assertion of fact
as required by Rule 56(c), the court may: . . . (2)
consider the fact undisputed for the purposes of the
motion; (3) grant summary judgment if the motion and
supporting materials – including the facts considered
undisputed – show that the movant is entitled to it. .
. .").  Thus, without an opposition or evidence from
Plaintiff, the Court applies standards consistent with
Federal Rule of Civil Procedure 56 and determines
whether Defendants' evidence demonstrates that there is

no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law.  See Henry v. Gill Indus., Inc., 983 F.2d 943, 949-50 (9th Cir. 1993).

**B. Defendants' Facts and Evidence**

The following material facts are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of the MSJ.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

Plaintiff's Employment

Plaintiff was an at-will employee at AutoZone. (SUF ¶¶ 1, 40.)  When Plaintiff was hired, he was hired at a higher rate than he sought, and over the course of Plaintiff's employment with Defendants, he received two wage increases.  (SUF ¶¶ 75-76.)  Plaintiff was also employed as a personal trainer and a massage therapist, and attended school during his employment at AutoZone. (Id. ¶ 30.)

9

Plaintiff started his employment with Defendants at the El Monte store in May 2008, where he worked for store manager Bob Armijo.  (Hoffman Decl., Ex. 5 at 33:5-8, 96:2-6.) There, he was trained by the assistant store manager.  (SUF ¶ 31.)  Plaintiff transferred to the Covina store in January or February 2009, where he was supervised by manager Manny Hernandez and manager Mark Wiley until his termination in July 2010.  (Id. ¶ 23; Hoffman Decl., Ex. 5 at 33:8-9.)  Plaintiff worked more hours at the Covina store than he did at the El Monte Store.  (SUF ¶ 29.)

Plaintiff's duties included unloading the truck on delivery days, which other employees helped him with.  (Id. ¶ 27.)  Wiley asked Plaintiff to unload the truck because "he was the best at it," he was Wiley's "right-hand man," and Wiley wanted to groom him to become manager.  (Id. ¶ 28.)  Plaintiff also drove at work on some days, during which his time was not supervised or controlled by anyone.  (Id. ¶ 50.)

While Plaintiff was employed with Defendants, there were openings for a full-time driver position and parts sales managers.  (Hoffman Decl., Ex. 5 at 146:9-11, 149:8-18.)  Plaintiff had a verbal conversation with Hernandez regarding the driver position and was not selected for the position.  (Id. at 146:9-147:8.) Plaintiff has no knowledge regarding the qualifications of the person ultimately selected for the driver

position. (SUF ¶ 33-34.)  Martinez told Plaintiff that the Commercial and District Managers felt he was slow at deliveries.  (Id. ¶ 35.)  Plaintiff also did not receive a parts sales manager position, which did not go to anyone within the Covina store.  (Hoffman Decl., Ex. 5 at 149:17-18, 153:17-154:4; SUF ¶ 37.)  Merlyn Baltodano, the District Manager in the Inland Valley Region, told Wiley that he did not feel Plaintiff was ready for promotion to parts sales manager.  (SUF ¶¶ 36, 79-83.)  Plaintiff does not know the qualifications of the employees who received the parts sales manager positions.  (Id. ¶ 38.)

During Plaintiff's employment, Plaintiff's store managers, district manager, and peers did not make any comments that made him believe they were biased against African-Americans.  (Id. ¶¶ 3, 26.)

Meal Periods and Rest Breaks

At all times Plaintiff was employed with Defendants, Defendants' policy was to provide:

- one meal period of not less than 30 minutes to employees who work more than 5 hours per day
- two meal periods of not less than 30 minutes each to employees who work more than 10 hours per day
- one paid 10 minute rest break to employees who work 4 hours per day

- two paid 10 minute rest breaks to employees who
  work 8 hours per day.

(SUF ¶¶ 56-57.)  Plaintiff was aware of this policy.
(<u>Id.</u> ¶ 51.)  Meal and rest periods were scheduled at
the stores at which Plaintiff worked.  (<u>Id.</u> ¶ 58.)  No
manager in the Covina store directed Plaintiff not to
take a rest break, he was never told to continue
working after he clocked out, no one ever told him he
would be disciplined if he took a meal period or rest
break, and he was never disciplined for taking rest
breaks or meal periods.  (<u>Id.</u> ¶¶ 62-66.)  Other
employees in those stores commonly took paid rest
breaks, and Plaintiff took some paid rest breaks and
unpaid meal breaks.  (<u>Id.</u> ¶ 59-61.)  Additionally,
Plaintiff never complained to human resources regarding
missed meal periods or rest breaks.  (<u>Id.</u> ¶ 67.)

<u>AutoZone Rewards Policy</u>

AutoZone has a customer rewards program under which
customers earn a point for qualifying purchases of $20
or more, and upon earning five points, the customer
receives $20 of in-store credit.  (<u>Id.</u> ¶ 5.)  Under the
rewards program policy, rewards may be earned and
applied only to registered members by scanning the
member's card or using the member's phone number with a
photo ID.  (<u>Id.</u> ¶ 6.)  The rewards policy states that
"AutoZoners must not, for any reason, keep or scan a

card at the register other than the member's card for
that member's transaction." (Id. ¶ 7.)  As stated in
the Employee Handbook, noncompliance with the rewards
policy and improper use of a rewards card are grounds
for termination.  (Id. ¶ 8.)  Plaintiff reviewed the
Employee Handbook, received training from his peers
regarding the rewards card program, and was trained to
ask a store manager about the rewards program when he
felt unfamiliar or uncomfortable with something.  (Id.
¶¶ 9-11.)

Plaintiff's Termination

     In July 2010, Manny Martinez interviewed Plaintiff
regarding the Proact query he ran, which showed
Plaintiff issued multiple credits to the same rewards
card in one day.  (Id. ¶¶ 12, 13, 15, 16.)  Plaintiff
admitted in a written statement that, without manager
authorization, he applied unearned credits to a rewards
card belonging to his cousin while his cousin was not
present, he knew the rewards policy requires validation
of the card holder's name with picture identification
when using the customer phone number, and the total
amount of store credit improperly applied to his
cousin's rewards card totaled $220.  (Id. ¶ 14.)  He
also wrote that "if a corrective action had to be
taken, [he] would completely understand and accept it."
(Id. ¶ 17.)  Plaintiff cannot identify any other

employees who credited family members with rewards points on transactions they did not make. (Id. ¶ 4.)

As District Manager, Baltodano directly supervises store managers and applies company policy. (Id. ¶¶ 79-83.) Defendants have no progressive discipline policy. (Id. ¶ 2.) After reviewing Plaintiff's admissions and the related facts, Baltodano decided to terminate Plaintiff, effective July 15, 2010, based on violations of company policies, including: improper use of the rewards card, conduct detrimental to the company, failure to comply with loss prevention and rewards procedures, and providing $220 in unauthorized store credit. (Id. ¶ 19.)

Plaintiff's DLSE Complaint

Plaintiff filed a complaint with the DLSE on July 20, 2010, alleging the missed meal and rest period violations set forth in this action. (Id. ¶¶ 45-46.) On August 24, 2010, Plaintiff attended a conference with the Deputy Labor Commissioner regarding his complaint, at which he told the Deputy Labor Commissioner that no one had ever denied his meal or rest breaks, but he did not have time to take them. (Id. ¶¶ 47-48.) Plaintiff attempted to gather statements from Wiley and one co-worker to support his complaint, but was unable to do so. (Id. ¶ 52, Hoffman Decl., Ex. 5 at 195:4-196:6.) On October 24, 2010, the

DLSE issued a notice dismissing Plaintiff's wage complaint, finding that Plaintiff "was unable to substantiate his claim that he was denied meal periods or rest periods." (SUF ¶ 53.)

## IV. DISCUSSION

### A. Wrongful Termination in Violation of Public Policy

Plaintiff's wrongful termination claim is based on alleged race discrimination, in violation of the California Constitution and the Fair Employment and Housing Act ("FEHA"). (FAC ¶ 16.)  Defendant moves for summary judgment on Plaintiff's wrongful termination claim on the grounds that Defendants had a valid, nondiscriminatory reason to terminate Plaintiff's employment. (MSJ at 6-14.)

In the absence of direct or circumstantial evidence of discriminatory intent, courts rely on the burden-shifting analysis established in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973), when analyzing claims of discrimination based on disparate treatment under California law.  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354; see e.g., Johnson v. Lockheed Martin Corp., No. 11-0225, 2012 WL 291744 (N.D. Cal. July 17, 2012). Under the McDonnell Douglas framework, a plaintiff must first state a *prima facie* case of discrimination.  Then the burden shifts to a defendant to offer evidence of a

legitimate, non-discriminatory reason for its action.
The burden then shifts to the plaintiff to produce
evidence which raises a genuine issue of fact as to
whether the defendant's stated reason for its action
was a pretext for unlawful discrimination.  See
McDonnell Douglas Corp. v. Green, 411 U.S. at 802-804.

### 1.   Prima Facie Case

    In order to state a *prima facie* case of
discrimination, a plaintiff must show that (1) he is a
member of a protected class; (2) he was qualified for
his position and performing his job satisfactorily; (3)
he experienced an adverse employment action; and (4)
"similarly situated individuals outside [his] protected
class were treated more favorably, or other
circumstances surrounding the adverse employment action
give rise to an inference of discrimination." Hawn v.
Executive Jet Management, Inc., 615 F.3d 1151, 1156
(9th Cir. 2010) (quoting Peterson v. Hewlett-Packard
Co., 358 F.3d 599, 603 (9th Cir. 2004)).

    Here, Plaintiff is a member of a protected class
as an African-American.  His *prima facie* case is based
on his allegations that he was terminated because he is
African-American, although he was a model employee.
(See FAC ¶¶ 6, 16, 19-21).  He alleges that his
violation of the Autozone rewards policy was a pretext
to discharge him.  (See id. ¶ 16.)  However, Plaintiff

16

has not provided any evidence that that there were similarly situated individuals outside his protected class who were not terminated.  That is, he has not provided any evidence that non-African-American employees who violated the rewards policy were not terminated.  Although Plaintiff stated that it was common for employees to credit one customer's purchase onto another customer's rewards account, he is unable to identify any other employees who credited customers' rewards accounts for purchases those customers did not make.  (Hoffman Decl., Ex. 5 at 104:15-141:9; 144:14-145:1.)  Accordingly, Plaintiff fails to establish a *prima facie* case.

**2.  Non-Discriminatory Reason**

Assuming, *arguendo*, that Plaintiff was able to establish a *prima facie* case, the burden shifts to Defendants to show a legitimate, nondiscriminatory reason for Plaintiff's termination.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802.

Defendants argue that Plaintiff's employment was terminated because he violated the rewards policy. Defendants provide ample evidence of Plaintiff's violation of the rewards policy, including Plaintiff's written admission that he applied $220 worth of unearned credits to his cousin's rewards card account. (Hoffman Decl., Ex. 6.)  Additionally, Defendants have

provided evidence that violation of the rewards card
policy may result in termination under company policy,
and that management investigated Plaintiff's violation
and terminated him shortly after his admissions.
(Culvahouse Decl., Ex. 2 at D00207; Martinez Decl. ¶¶
3,4; Baltodano Decl. ¶¶ 11-13.)

The Court finds that Defendants have met their
burden of articulating a legitimate nondiscriminatory
reason for terminating Plaintiff.

**3.  Prextext**

Because Defendants have provided a legitimate,
nondiscriminatory reason for terminating Plaintiff, the
burden shifts to Plaintiff to provide evidence that
Defendants' reason for terminating him was merely a
pretext for discrimination.  <u>McDonnell Douglas Corp. v.
Green</u>, 411 U.S. at 804.

A plaintiff can show that an employer's proffered
reasons for the adverse employment action are
pretextual by directly persuading the court that a
discriminatory reason was more likely the motivation
behind the action, or by showing that the proffered
explanation is not credible.  <u>Hernandez v. Spacelabs
Med. Inc.</u>, 343 F.3d 1107, 1115 (9th Cir. 2003).

Plaintiff has not provided any evidence to raise a
genuine factual dispute regarding pretext.  In addition
to presenting a legitimate, nondiscriminatory reason

for Plaintiff's termination, Defendants' evidence shows that no manager made any discriminatory remarks which would make Plaintiff believe they were biased against African-Americans.  (SUF ¶¶ 3, 26.)  As Plaintiff has not provided any evidence that demonstrates that it is likely that his termination was motivated by a racial bias, or that Defendants' reason for his termination is not credible, he fails to rebut Defendants' evidence that he was terminated because he violated the rewards card policy and applied $220 worth of unearned credit on his cousin's reward account.

"[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption."  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1037 (9th Cir. 2006) (citation omitted).

Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's claim of wrongful termination in violation of public policy.

**B. Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing because they: did not offer Plaintiff a reasonable schedule of employment by which he could earn a living, did not

19

offer Plaintiff advancement opportunities, terminated Plaintiff because he is African-American, and refused or neglected to give Plaintiff his mandatory rest and meal periods.  (FAC ¶¶ 22, 24.)  He alleges that he has suffered and continues to suffer losses of earnings, pay, and benefits.  (Id. ¶ 25.)

Defendants argue that Plaintiff's claim fails because he was employed at-will, there is no implied covenant to comply with the law, and his schedule, lack of promotion, and meal and rest period complaints are time-barred, with the possible exception of one month. (MSJ at 14-16.)

The purpose of the implied covenant is to prevent one party from engaging in conduct that frustrates the other party's rights to the benefits of the contract. Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999).  The covenant protects the express covenants or promises of the contract, and does not protect "some general public policy interest not directly tied to the contract's purpose." Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc., 2 Cal. 4th 342, 373 (1992).  In order to succeed on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance

occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

## 1.   Plaintiff's Termination

Under California law, employment is presumed at-will unless the parties have made an "express oral or written agreement specifying the length of employment or grounds for termination." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 677 (1988). An employee may overcome this presumption with evidence of contrary intent. Id. at 677. Courts consider factors such as personnel policies and practices, longevity of service, actions by the employer reflecting assurances of continued employment, and industry practices. Explicit at-will contract language "must be taken into account, along with all other pertinent evidence, in ascertaining the terms on which a worker was employed." Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 340 (2000). Id. at 311. Defendants have provided evidence that Plaintiff had an express at-will employment relationship with Defendants. (See Hoffman Decl., Ex. 7 at 411.) Plaintiff's term of employment of approximately two years and the at-will provisions contained in the employee handbook suggest that there

was no implied contract that Defendants could not terminate Plaintiff's employment at any time. Therefore, Plaintiff cannot succeed on an implied covenant claim based on his termination.

### 2. Plaintiff's Schedule, Advancement Opportunities, and Meal and Rest Periods

"The implied covenant, however, remains available as a cause of action, even in the face of an at-will employment contract, where a plaintiff alleges that conduct *other than* his discharge violated the covenant." Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264, 1272 (9th Cir. 1990)(emphasis in original). Here, Plaintiff also alleges that the implied covenant was breached because Defendant did not give him a better schedule, denied him promotions, and failed to provide him with his meal and rest periods. (FAC ¶¶ 22, 24.)

Although breach of a specific provision of a contract is not necessary for an implied covenant claim, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Guz, 24 Cal. 4th at 350 (2000); Marsu, 185 F.3d at 937. Plaintiff has not pointed to any evidence of a mutual understanding that Defendants would provide him with a specific schedule, number of hours, or any advancement opportunities. See id. at 366.

Particularly in light of Defendants' evidence showing
that Plaintiff was an at-will employee, AutoZone
employees are not entitled to overtime hours, and work
schedules are subject to change based on customer
traffic, there is no issue of fact as to whether
Defendants were obligated to provide more hours or
promotions to Plaintiff. (See Baltodano Decl., Ex. 1 at
D00464; Hoffman Decl., Ex. 7 at D00408.)

Finally, Plaintiff's implied covenant claim based
on Defendants' alleged failure to provide him with rest
and meal periods fails because the Court has found that
Defendants did provide Plaintiff with meal and rest
periods. (See infra Section IV.C.)

Accordingly, Defendants' Motion for Summary
Judgment is GRANTED as to Plaintiff's claim for breach
of implied covenant of good faith and fair dealing.

## C. Statutory Rest and Meal Periods

Plaintiff alleges that Defendants violated their
statutory obligations under Title 8 of the California
Code of Regulations §§ 11, 12 because they did not
allow him to take his meal and rest periods. (FAC ¶
28.) Defendants argue that they provided Plaintiff
with his meal and rest periods, and Plaintiff's meal
and rest period claim is time-barred because Plaintiff
did not file a writ of mandamus to challenge the DLSE's
decision within the statutory period. (MSJ at 17-22.)

Employees who work more than five hours per day must be provided with a meal period of 30 minutes, unless the total hours worked is six hours or less and the employer and employee mutually consent to waiving the meal period.  Cal. Lab. Code § 512(a); 8 Cal. Code Reg. § 11040(11)(A).  Employees who work 10 hours per day are provided with two 30 minute meal breaks, unless the total hours worked is no more than 12 hours and the employer and employee mutually consent to waiving the second meal period.  Id.  Additionally, employers shall permit employees to take rest periods of 10 minutes for every four hours worked.  Cal. Code Reg. § 11040(12)(A).  However, employers are only required to authorize and permit meal and rest periods, they are not obligated to ensure that employees do no work.  Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1033-34 (2012).

As demonstrated by the evidence before the Court, Defendants had legally compliant meal and rest period policies, of which Plaintiff was aware.  Meal and rest periods were scheduled at both stores where Plaintiff worked, and other employees commonly took paid rest breaks.  Additionally, Plaintiff sometimes took his meal and rest periods, he was never disciplined for taking rest or meal periods, no one ever told Plaintiff that he would be disciplined for taking a meal or rest period or specifically instructed him to keep working

after he clocked out, and he never complained to human resources regarding missed meal periods or rest breaks.

Plaintiff testified during his deposition that he was not directed to skip his rest breaks, but managers told him that they did not have coverage and needed him at the counter when he asked to take rest breaks. (See e.g., Hoffman Decl., Ex. 5 at 171:18-172:12, 175:11-14.) This testimony does not raise a genuine issue of material fact since Plaintiff has admitted that he has no records of missed breaks and has provided no other evidence to support his alleged missed meal and rest periods. (Id. at 175:20-24.) See Federal Trade Commission v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.")

The Court finds that Defendants provided Plaintiff with meal and rest periods. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claim for breach of statutory obligations.[2]

---

[2] Because the Court finds that summary judgment is appropriate on the grounds that Defendants provided Plaintiff with rest and meal periods, the Court does not address Defendants' argument that the claim is time-barred.

**D. Intentional Infliction of Emotional Distress**

Plaintiff alleges that Defendants deliberately discriminated against him because he is African-American by: refusing to give him rest and meal periods, assigning him all the heavy lifting tasks, refusing to give him a reasonable or full-time schedule, refusing to promote him, and terminating his employment. (FAC ¶¶ 32-33.)

"To prove a claim for intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct by the defendant either with intent or reckless disregard, (2) severe and extreme emotional distress suffered by the plaintiff, and (3) actual and proximate causation." London v. Sears, Roebuck & Co., 619 F. Supp. 2d 854 (N.D. Cal. 2009)(citing Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991)). In order to qualify as outrageous, the conduct alleged "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982); see also Jersey v. John Muir Medical Center, 97 Cal. App. 4th 814, 830 (2002)(finding that emotional distress claims are barred if defendant's conduct was not "beyond what is to be expected from a normal employment relationship").

As discussed above, Plaintiff has not provided sufficient evidence to counter Defendants' evidence

that he was terminated for a legitimate, nondiscriminatory reason and that Defendants provided him with meal and rest periods.  Furthermore, even if the Court found that Defendants assigned him to heavy lifting tasks, did not provide him with a schedule through which he could earn a living wage, and refused to promote him although he was qualified, this conduct is not so extreme and outrageous to justify an award for intentional infliction of emotional distress.  See Cochran v. Cochran, 65 Cal. App. 4th 488, 496 (1998) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").  Based on the record, a reasonable jury could not find that Defendants engaged in extreme and outrageous conduct.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's intentional infliction of emotional distress claim.

**V.   CONCLUSION**

For the foregoing reasons, the Court GRANTS summary judgment in favor of Defendants on all four of Plaintiff's claims.  The Court VACATES the June 24, 2013 hearing.

Dated:  June 19, 2013
_____
Honorable Jesus G. Bernal
United States District Judge